## Skinner *v.* Collier.

Sealed instruments are made negotiable by statute, and are entitled to days of grace.

IN ERROR from the circuit court of the county of Octibbeha.

This was an action of assumpsit, founded on the assignment of a writing obligatory, which writing was in the following words: " On the first day of September, 1838, I promise to pay Charles E. Atkins two hundred and ten dollars, bearing interest from the date thereof, for value received of him. Witness my hand and seal this 25th day of August, 1837. Signed, Felix Ellis, (seal.)"

This instrument afterwards fell into the hands of Skinner, who assigned it to the plaintiff below in the following words: "I assign the within note to Robert Collier, (signed,) John E. Skinner."— Upon which assignment this action was instituted.

On the trial, P. P. Hogue, Esquire, was introduced as a witness, and testified that the plaintiff in this suit informed him that he (plaintiff) demanded payment of the maker of the above writing obligatory, at Louisville, Winston county, Mississippi, on the first day of September, 1838.. The witness further stated, that the plaintiff on that day left said writing obligatory with him for collection, that he, the witness, on the 4th day of the same month, handed the writing obligatory to R. B. Mills, his partner, for the purpose of presenting it to the maker, Ellis; that Mills took the instrument to Ellis, but witness could not say positively that he saw the same presented to Ellis, but that Ellis afterwards, in conversation with witness, admitted that the demand had been made of him.

L. B. Griffin deposed that he heard the plaintiff notify the defendant, Skinner, that payment of the said writing obligatory had been demanded of the maker Ellis, and Connel, one of the endorsers, in Louisville, Mississippi, who refused payment. Witness further stated that this notice was given about the first of September, 1838,.to said Skinner. He would not swear positively as to the time, but had written documents in his possession, by

[Skinner *v.* Collier.]

which he knew the notification was about that time.   Upon the cross-examination, the witness said he could not be positive as to the time of notification, it might have been the last days of August or the first days of September, he thought it was about the 3d day of September, 1838.

Another witness (Gray) proved that the maker of the said writing obligatory was insolvent.   Exceptions were taken to this testimony.

It was further proved, that there was a mail route from Louisville, where the payment of the said instrument was demanded, to Fulsom, three times a week, the nearest post-office to the defendant, and that no notice was ever sent by mail.   Fulsom was about twenty-six miles from Louisville.

Verdict for plaintiff for the sum of 231 dollars.

Defendant moved for a new trial, because—

1.  That the verdict is contrary to law.

2.  It is contrary to evidence.

3.  The verdict is contrary to the charge of the court.

4.  The court admitted illegal testimony; which motion was overruled, and bills of exceptions signed and writ of error to this court.

Howard, for plaintiff in error.

A new trial ought to have been granted in this case.   The maker of the writing obligatory was entitled to days of grace.

It appeared in evidence that the demand of payment of the maker was on the 1st day of September, when it should have been on the 4th.   This was clearly not such a notice, as would charge the endorser, because the maker could not be compelled to pay until the expiration of the days of grace.

A bill or note payable one month after date, and dated the first day of the current month, should be presented on the 4th day of the succeeding month, unless that day be Sunday, and then on the third, Chitty on B. 406.

The witness introduced upon the trial to prove notice to the endorser, did not state positively when the notice of non-payment was given.   His evidence was that, notice was given about the 1st of September.   On his cross examination he stated that, it might

Vol. IV.—34

be the last days of August or the first days of September, but thought it was about the 3rd of September. This proof was entirely too vague, but taken most favorably for the plaintiff, that notice was given on the 3rd of September, it would be clearly insufficient in law to charge the endorser, because the demand could not legally be made of the maker until the fourth of September. 8 Cowen's Rep. 203.

A bill does not become due on the day mentioned on its face, but on the last day of grace, 3 Kent. Com. 72. Porthouse *v.* Parker, 1 Camp. Rep. 82.

I think there can be no question that bills single, and bonds are entitled to days of grace. The statute Rev. C. 464, enacts that *all bonds, obligations, bills single, promissory notes, and all other writings for the payment of money, or any other thing, shall, and may be assigned by endorsement, whether the same be made payable to the order, or assigns of the obligee or payee, or not.* It further declares, that the assignee of such *instrument* may maintain suit thereon as in the case of inland bills of exchange. It will be perceived that this act is much broader than the statute of Anne, and it is the only law by which even promissory notes and bills of exchange are assignable in this state. Bonds and bills single, are as fully embraced within the express terms of the statute as bills of exchange. If sealed instruments are negotiable, they are entitled to all the incidents of negotiable paper. The statute expressly declares, that, they shall be assigned by endorsement, and that the endorsee may maintain an action on them, as on *inland* bills of *exchange.* It would be difficult for language *to* be more explicit, or to give to paper a more negotiable quality than the act has to sealed instruments.

There is no reason in the nature of things why a sealed note should not be entitled to days of grace, as much as a note not under seal. All the arguments of convenience in trade, business, and commerce apply as well to the one as the other. There is as · much reason for the unrestrained negotiability of a sealed note, as for one which has not that badge attached to it. The tendency of modern decisions and legislation, has been to do away with the distinction between sealed and unsealed instruments. Whatever reason there may once have existed for the greater solemnity

[Skinner *v.* Collier.]

attached to sealed instruments over parol contracts, that reason has long since ceased, and the distinction is now entirely artificial and technical.

It has been decided in Tennessee, in a similar statute, that sealed instruments are negotiable, and entitled to days of grace. Martin & Yerger, 237; T. Statutes, 499. See also 1 Ala. Rep. 296; 2 Porter, 461; as to the construction of this statute, from which ours is a copy.

The testimony of Gray, proving the insolvency of Ellis, was illegal. It was not pertinent to the issue, and tended only to mislead the minds of the jury.

Opinion of the court by Mr. Justice TURNER.

The counsel for the plaintiff in error, has raised the question, whether in cases of sealed instruments, such as this, days of grace are allowed, as in cases of promissory notes and bills of exchange. We were at first of opinion that sealed instruments are not within the *lex mercatoria*, which allows three days of grace. But, on further consideration, and the examination of the statute, and the adjudged cases, we have considered otherwise, and so adjudge, in order to settle the question. We find no reported case on the subject in our own courts; but it is believed, that the practice has varied. See the case of ———, and of ———, in Walker's Reports.

Our statute, Rev. Code, page 464, section 9, makes all bonds, bills, &c. for the payment of money or other thing, assignable, and gives an action to the assignee, as in cases of inland bills of exchange.

In Alabama and Tennessee, it has been decided, that under their statutes, which are similar to ours, days of grace are allowable, on sealed instruments. See 2 Yerger, 576; and Yerger, Alabama, 296; and 2 Porter's Rep. 461; Martin & Yerger, 237, Love *v.* Nelson.

There is in the ordinary transactions of business, but a technical difference between a written promise under seal, and one not under seal, for the payment of money; and it is better to have our rules of conduct as uniform as possible.

But this case does not turn on this question.

[Skinner *v.* Collier.]

The testimony given in the case, went to the jury without objection, except as to Gray's evidence, and that was clearly admissible, or if it was not, it was quite immaterial in the case. The first objection made to the evidence was on the motion for a new trial. It was then too late. The silence of the party was a waiver of objection. A party who intends to avail himself of the admission of improper testimony, must make his objection when the testimony is offered. For any thing that appears, this testimony was admitted by consent.

As the whole of the evidence was before the jury, without objection, except as above stated, they were the proper judges of the weight to which it was entitled. Its evident tendency was to prove demand and notice, and we ought not to disturb a just verdict.

Judgment affirmed.